SPIEGEL ET AL. *v.* GANSBERG ET AL.

CITY.—*Vacation of Street.*—It is for the common council, and not the courts, to decide on the expediency of vacating a street or alley of a city.

SAME.—*Limitation of Power.*—When a petition is presented to the common council for the vacation of a street or alley, or any part thereof, and a remonstrance is filed against such vacation, the council has no power to order the street or alley to be vacated, unless the remonstrance be withdrawn or two-thirds of all the owners of real estate of such city petition therefor.

SAME.—*Injunction.*—An injunction lies to prevent the common council from enforcing an illegal order made by it for vacating a street.

From the Marion Civil Circuit Court.

*J. S. Harvey*, for appellants.

*J. L. Mitchell* and *W. A. Ketcham*, for appellees.

BUSKIRK, J.—This was an action brought by the appellees against the appellants and the city of Indianapolis, to enjoin the appellants from proceeding under an order of the common council of said city vacating an alley therein, upon the ground that said order had been illegally passed.

The complaint alleges that the appellants presented to the common council of said city a petition for the vacation of an alley of said city, describing it. The petition is set forth in the complaint, and it is averred that it was referred to the committee on streets and alleys; that said plaintiff, with divers others, owning real estate in and near out-lot ·85, presented a remonstrance to said common council, against the vacation of said alley, which was referred to the same committee; that the said common council subsequently ordered the vacation of the first alley south of Pogue's Run; that said out-lot 85 was, in the year 1850, laid out into twenty lots by one John Little, and a plat thereof duly recorded, which plat shows an alley twenty-four feet in width, now known as Cook street, running north and south nearly through the center of said out-lot, and four alleys running east and west; said alleys being so located that each separate lot in said out-lot was bounded by a street or alley on either the north or south side thereof; that front-

ing on said north and south alley, on Cook street, are several dwelling-houses, all occupied, two of them belonging to William Cook, one of the plaintiffs and one of the remonstrants against said vacation, and two belonging to the heirs of Frederick Cook, one of said heirs being William Cook, a remonstrant; one owned by John Moran, a remonstrant; and also, two school-houses, one on each side of said alley or Cook street, belonging to the Evangelical Lutheran Church; that nearly all of the south half of out-lot 85 and all of out-lot 86 are densely built up and occupied by about seventy families,

That out-lot 87, directly south, and out-lot 88, immediately south-east and cornering with out-lot 85, and the south half of square 80, directly west, and square 81, south-west and cornering with said out-lot 85, are all occupied as residences and business houses and contain a large population, all of whom are interested in keeping open the public avenues through said several squares and out-lots, except the said petitioners, who own the lots immediately bordering on said alley in controversy, and whose private interests will be promoted by the vacation of said alley.

That the said remonstrants, except Anthony Shrader, were at the time, and still are, owners of lots in out-lot 85, or the out-lots and squares immediately surrounding the same (particularly describing the lots owned by each); that the west half of the first alley appearing on the plat of out-lot 85 south of Pogue's Run was vacated about six years ago, and is now partly occupied by the Junction Railroad Company, and is unavailable for transit through said square; and by the vacation of the alley named in the petition, William Haskett will be cut off from any outlet or approach to the rear of his lot from East or Cook streets; that Maryland street, lying immediately north of lots 85 and 86, is encumbered, and the entrance thereto from Liberty street is encumbered, by the Pittsburgh, Cincinnati, and St. Louis, and the Junction Railroad Companies' tracks, and divers railroad switches, and so much and frequently obstructed by the passage of cars and

by trains of cars standing on Maryland street at the crossing of Liberty street, as to make Liberty street at said crossing almost useless, and always dangerous for the passage of persons and vehicles; that the nearest and most convenient outlet to East street, for persons living on the north half of outlots 85 and 86, will be through the alley so sought to be vacated.

And to clearly show the location of said several out-lots, streets, and alleys, a map of out-lots 85, 86, 87, and 88 was appended to the complaint.

The complaint further states that such proceedings were had by said common council on said petition and remonstrance, that on the 18th day of June, 1870, said common council, on the recommendation of said committee on streets and alleys, did unlawfully and illegally, as plaintiffs are advised, make and pass an order that said alley should be vacated, which order was as follows:

"Come now the petitioners and produce proof that they have given the legal notice of the pendency, before the common council of the city of Indianapolis, of their petition to vacate the first alley south of Pogue's Run, running east and west through out-lot 85 from East to Liberty street; and no person appeared to object to said vacation who had a legal right to do so, as appears from an opinion of the city attorney herewith reported; and it appeared to the satisfaction of the common council that the prayer of the petitioners should be granted. It is therefore ordered by the common council of the city of Indianapolis, that the said alley running east and west through out-lot 85, from East to Liberty street, be and the same is hereby vacated."

And the said complainants further state and charge, that said council disregarded the remonstrance aforesaid, under the pretence that said remonstrants had no legal right to remonstrate against the vacation of said alley, when in fact all of said remonstrants were real estate owners of said city and residents therein, and were all real estate owners in said out-lot 85 or in other out-lots and squares immediately adjacent thereto, except said Shrader, and interested in

keeping open all streets and alleys in said out-lot 85, in order that they may have free ingress and egress to and from the streets and alleys in and around said out-lot; and they were advised and so charge that the action of said common council was illegal, because, while said remonstrance was before it and not withdrawn, said council had no power, under the statute, to order the vacation of said alley, without a petition in favor thereof by two-thirds of the real estate owners of said city petitioning for said vacation, except those named in said original petition, being all the real estate holders of said city, and then numbering more than a thousand, and none of said remonstrants having withdrawn their objection to such vacation.

The complaint further charges that the action of the said council was unauthorized and illegal, because the petition on which it acted did not give the names of the persons to be affected by the vacation of said alley.

And the said complaint further states, that the lots lying immediately on said alley are owned by the said Spiegel, Thoms, and their co-petitioners, exclusively, and they threaten to and are about to take possession of said alley and appropriate it to their private use, claiming that, by said order of vacation, the title of the ground covered by said alley has vested in them; wherefore, etc. Then follows a special prayer to enjoin the said common council from taking any steps to carry into execution the said order vacating said alley, and the appellants from taking the possession of, and appropriating to their private use, the ground covered by the said alley, or from in any manner obstructing the said alley so as to interfere with the free use thereof by the public.

A temporary restraining order was granted by consent on the part of the common council of said city.

The appellants demurred to the complaint, upon the ground that it did not contain facts sufficient to constitute a cause of action. The demurrer was overruled, and the appellants excepted.

The defendants then filed their answer to the complaint in two paragraphs. The first was the general denial. The second was as follows: " 2d. The defendants allege that in the proceedings before the common council, a petition for the vacation of the alley, signed by all the owners of lots of land adjacent to or bordering on said alley, was duly presented to the said common council; that due notice of such application was given and proved, as required by law; that the matter, including the petition, was referred to a committee of said common council; that said committee, after a remonstrance of divers citizens was referred to them, reported to said council a report recommending such vacation, and that thereupon the said council, by a two-thirds vote, ordered said alley to be vacated. All of which fully and at large appears by a duly certified copy of the proceedings of said council, which is filed and made a part of this answer."

The plaintiffs demurred to the second paragraph of the answer, upon the ground that it did not contain facts sufficient to constitute a defence. Which demurrer was by the court sustained, to which ruling the defendants excepted, and thereupon withdrew the general denial and refused to plead further, and the court rendered a final judgment for the plaintiffs.

The appellants have assigned for error the overruling of the demurrer to the complaint, and the sustaining of it to the second paragraph of the answer.

The real question presented by each assignment of error is, whether the alley in question was legally vacated. If it was, then the court below erred in overruling the demurrer to the complaint and in sustaining it to the answer.

We have nothing to do with the question of the expediency or inexpediency of vacating the alley. That question belonged to the common council. The question in this case is, whether the power vested in the common council has been exercised according to law.

The complaint charges that the action of the common council was and is illegal, because while the remonstrance

was before it and not withdrawn, said council had no power, under the statute, to order the vacation of said alley without a petition in favor thereof by two-thirds of the real estate owners of said city for said vacation, except those named in said original petition, being all the real estate owners of said city.

The position assumed by counsel for appellees, in argument here, is, that where a remonstrance is filed to the vacation of an alley, the common council possesses no power to order such vacation, unless the objector consents to such vacation, or that such vacation is asked for by a petition signed by two-thirds of the real estate owners of said city.

The solution of the question involves an examination of the several statutes relating to the vacation of streets and alleys in towns and cities. The only power conferred upon the common council of a city is contained in the 86th section of the act of 1867 for the incorporation of cities, which reads as follows:

" The common council shall have the same power to vacate any lot, street, alley, common, public square, or part thereof, in any city, which the board of county commissioners now have in reference to towns, and all the proceedings necessary to effect any such vacation shall conform, as nearly as the same are applicable, to those now prescribed for such vacation in reference to towns: Provided, that twenty days notice of the pendency of any such petition shall be sufficient: And provided, further, that whenever in any incorporated city in this State it shall so happen that such city shall hold within such city, for the purpose of a public park or square, or public schools, two tracts of land, situated on opposite sides of a public street, the common council of such city shall have the power, by an ordinance adopted by not less than two-thirds of the councilmen of such city, to vacate so much of said street as lies between the said tracts of land, in order that the same may be united as one tract, and such part of said street so vacated shall be deemed and held to be part of said street for the same uses and purposes."

Sections 6 and 7 of an act touching the laying out and

vacating of towns, streets, alleys, and public squares, etc., approved May 20th, 1852, and as amended by the Acts of 1857, read as follows:

, " Sec. 6. Whenever any person or corporation interested in any incorporated town, or in any real estate in this State laid out in streets and lots as a town, may desire to vacate any lot, street, alley, common, public square, or part thereof, in such town or plan of town, such person or corporation may petition the board of county commissioners for the proper county, giving a distinct description of the property to be vacated, and the name of the persons to be affected thereby, which petition shall be filed with the county auditor thirty days previous to the sitting of such board, and notice of the pendency of said petition shall be given for the same space of time, in a public newspaper printed in said county, if any there be, and by written notices thereof set up in three public places, near the lots, streets, alleys, common, or square proposed to be vacated.

" Sec. 7. If no opposition be made to such petition, the board of county commissioners may vacate the same with such restrictions as they may deem for the public good ; but if opposition be made, such application shall be continued until the next term of the board, when, if the objector consent to such vacation, or if two-thirds of all the real estate holders of the town petition therefor, the board may grant the prayer of the petition."

It is, in the first place, maintained by counsel for appellants, that so much of section 7, above quoted, as requires, in case a remonstrance is filed, a petition signed by two-thirds of the owners of the real estate in a town asking for such vacation, is not applicable to a city, and therefore does not apply in this case. The argument is, that to require a petition signed by two-thirds of the real estate owners in a city like Indianapolis, would virtually prevent the operation of the law ; for if any one person should object, a petition in favor of such vacation, signed by two-thirds of all the real estate owners of the city would be required as a condition prece-

dent to the right of the common council to order such vacation.

Section 86, above quoted, confers upon the common council "the same power to vacate any lot, street, alley, common, public square, or part thereof, in any city, which the board of county commissioners have in reference to towns," and provides, that " all the proceedings necessary to effect any such vacation shall conform, as nearly as the same are applicable, to those now prescribed for such vacation in reference to towns," except that twenty days notice shall be sufficient, instead of the thirty days as required in case of towns.

By the 86th section of the city charter, there is conferred on the common council the same power to vacate any lot, street, alley, common, public square, or part thereof, in any city, which the board of county commissioners now have in reference to towns. By the phrase "the same power" is meant as much power, no more and no less, but the same. There is no room to doubt that the board of county commissioners, where opposition is made, possess no power to pass an order vacating a lot, street, alley, common, public square, or part thereof, unless the objector consent to such vacation, or unless two-thirds of all the real estate holders of the town petition therefor.

The next question is, does the same rule apply where the application is made to the common council of a city? It is further provided by said section 86, that "all the proceedings necessary to effect any such vacation shall conform, as nearly as the same are applicable, to those now prescribed for such vacation in reference to towns: Provided, that twenty days notice of the pendency of any such petition shall be sufficient."

It is very obvious that the above clause has no reference to the question of power. The first clause of the section, as we have seen, had conferred on the common council of a city the same power that was possessed by the board of county commissioners in reference to towns. It relates to the form and manner of the proceedings, and provides that they shall

be the same as far as applicable. Great stress has been laid in argument upon the word applicable. It seems to us very plain that the purpose in using such word was to provide that the proceedings should not conform in all respects to those required before the board of commissioners, but as near as the circumstances would permit. In the one case, the application is made to the board of commissioners, while in the other it is made to the common council. This view is greatly strengthened by the proviso. In the proceedings before the board of commissioners, thirty days notice is required, but by the proviso, the notice required is only twenty days. When the application is made to the board of commissioners, they must act upon the application without any reference, while the common council may refer to an appropriate committee.

We are very clearly of opinion that the common council of the city of Indianapolis possessed no power to make the order in question. After objection was made to the vacation of the alley, it had no right to proceed, unless the objector consented, or unless two-thirds of the owners of real estate in the city signed a petition praying for such vacation. This rule, when applied to a large city, may be unreasonable and inconvenient; for this the legislature is responsible and not the courts. If we do not apply this rule to cities, by what rule shall the common council be governed? The legislature has fixed no other number than two-thirds. It cannot be successfully maintained that the legislature intended, in the case of an application to the common council to vacate an alley, that no petition should be required. Then, if a petition must be filed, by whom and by what number of persons must it be signed? The courts have no power to change the statute law. The statute, in case of opposition, requires a petition signed by two-thirds of the property holders in the city.

The judgment is affirmed, with costs.